Vincent C. Rampton, USB 2684
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
VRampton@parsonsbehle.com

*Attorneys for Plaintiff*
*ELIZABETH ONDINA WRIGHT*

---

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

---

| ELIZABETH ONDINA WRIGHT, an individual, | **COMPLAINT** |
|---|---|
| Plaintiff, | Civil No. |
| vs. | Discovery Tier 2 |
| UNIVERSITY OF UTAH, a political subdivision of the State of Utah, | JURY DEMANDED |
| Defendant. | |

Plaintiff Elizabeth Ondina Wright complains of Defendant University of Utah, and for cause of action alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Elizabeth Ondina Wright is an individual who, at all times relevant, has been a citizen of the United States of America and resident of the State of Utah.

2.      The University of Utah ("University") is a political subdivision of the State of Utah and defines itself as "a state institution of higher education, a body politic and corporate of the State of Utah." The University receives federal financial assistance.

3.      By this action, Plaintiff petitions for judicial review of the University's denial of a document request made under the Utah Government Records Access and Management Act, Utah Code Ann. § 63G-2-201, *et seq* (GRAMA).

4.      This is also an action for violation of Plaintiff's rights under 42 U.S.C. §§ 1983 and 2000(d), with additional claims arising under state law.

5.      Jurisdiction obtained pursuant to 42 U.S.C. §§ 2000(d) and 1983, and Utah Code Ann. §§ 63G-2-404 and 78A-5-102, and venue is properly set in the Third Judicial District Court in and for Salt Lake County, State of Utah, pursuant to Utah Code Ann. § 78B-3a-201(1).

## FACTS

6.      Plaintiff, while asserting the United States, is Peruvian by birth, and is Latina in appearance and accent.

7.      On January 18, 2025, Plaintiff attended a Utah-BYU basketball game at the University Special Events Center with her husband and children, having paid the standard admission prices.

8.      During the game, Plaintiff's children (including pre-teen children) were seated in the row in front of herself and her husband.

9.      As has been traditional at all Utah-BYU sporting events in living memory, Plaintiff's children were displaying two signs with frivolous but harmless messages aimed at the opposing team.

10.     At a certain point during the game, and without any prior warning, two employees of the University of Utah guest services (both older men) approached Plaintiff's children, ripped the signs from their possession, yelled abuse at them, and departed.

11. The children (the youngest of them was 8 years old) were frightened and visibly upset by having been accosted in this manner.

12. Plaintiff and her husband therefore went to the top of the aisle by which they had been seated, spoke to an usher located there, and asked who they could talk to about the incident.

13. Plaintiff was directed to the Guest Services officer at door No. 18.

14. Neither Plaintiff nor her husband touched or made any contact with the usher.

15. At the indicated location, Plaintiff spoke to a Guest Services representative, who was sympathetic with her concerns over the incident and its impact on their children, and summoned another individual representing the University.

16. Plaintiff protested to the second individual that the actions of the university representatives had been unwarranted and upsetting, and asked that the signs be returned. Plaintiff also asked for an apology.

17. Neither Plaintiff nor her husband made any physical contact with either Guest Services representative.

18. No representative of the University apologized for the incident, nor did any offer to return the signs that had been taken.

19. At the conclusion of this exchange, therefore, Plaintiff and her husband returned to their seats for the remainder of the game.

20. Near the end of the game, five or six police officers descended on Plaintiff and her husband.

21. A Sargent Lancaster beckoned to Plaintiff, directing her to leave her seat.

22. Plaintiff and her husband complied, walking back up the aisle; however, Plaintiff's husband was blocked by other police officers from accompanying Plaintiff.

3

23.     Sargent Lancaster then notified Plaintiff that she was ordered to leave the premises immediately, on pain of being charged with trespass.

24.     The accompanying police officers, together with the Guest Services representative to whom Plaintiff had previously spoken, were smiling broadly at the incident.

25.     Plaintiff vocally protested being ejected from the event when her only conduct had been to protest the treatment of her children by university representatives; however, she was told that she must leave immediately on pain of being charged with trespass.   University representatives fabricated a false claim that she had assaulted a University representative as a means of justifying their conduct.

26.     Plaintiff went back to the family seats, collected her children, and the family departed the event to the laughter of the attending police officers and guest services representative.

27.     On February 18, 2025, Plaintiff submitted the GRAMA request to the University relative to the January 18, 2025 incident. *See* 7

28.     7 1.

29.     The University responded on April 1, 2025 with only one document: an eight-page document entitled "Case Report for Incident 25-0194 . . . Nature: Disorderly," and the bodycam recording of Plaintiff's ejectment from the event. *See* Exhibit 2.

30.     The case report specifically mentioned two witness statements which were not produced, although the case summary clearly relied on their content, and no claim of protection was asserted in the University's response.

31.     In communication with individuals within the university, Plaintiff and her husband learned that, in addition to the two undisclosed statements, other documents existed relating to the incident which were not then produced.

32.     Accordingly, on May 12, 2025, Plaintiff (hoping to avoid further legal proceedings) submitted a follow-up GRAMA request seeking production of all records relating to the January 18, 2025 incident which had not been produced in response to the prior request. *See* Exhibit 3.

33.     The University responded to Plaintiff's Second Request on May 27, 2025, dismissing it as "duplicative." *See* Exhibit 4.

34.     Plaintiff appealed the University's denial of her Second GRAMA Request to the University's Chief Administrative Officer on June 25, 2025. *See* Exhibit 5.

35.     On July 10, 2025, the University's Chief Administrative Officer affirmed the University's denial of Plaintiff's Second GRAMA Request. *See* Exhibit 6.

36.     By letter dated August 5, 2025, Plaintiff requested mediation of the University's denial of her Second GRAMA Request through the office of the Government Records Ombudsman pursuant to Utah Code Ann. § 62A-12-204(1)(a)(iii). *See* Exhibit 7.

37.     On August 13, 2025, the Government Records Ombudsman certified to Plaintiff that the University declined to participate in the mediation. *See* Exhibit 8.

38.     On June 8, 2025, Plaintiff delivered to the University a notice of claim in accordance with Utah Code Ann. § 63G-7-401, *et seq*. *See* Exhibit 9.

## FIRST CLAIM FOR RELIEF

### (Appeal From Denial of GRAMA Request)

39.    Plaintiff incorporates by reference all allegations in paragraphs 1 through 37 of this Complaint.

40.    The University, acting through its authorized representatives, wrongfully denied Plaintiff's second request under GRAMA for documents relating to the January 18 2025, incident, in that:

      a.    She was entitled to inspect the requested records under Utah Code Ann. § 63G-2-201, the documents qualifying as "records" under Utah Code Ann. § 63G-2-103(25);

      b.    She was the subject of the requested records within the meaning of Utah Code Ann. § 63G-2-202(1)(a)(i), and therefore entitled to inspect private, controlled and protected documents thereunder; and

      c.    Her request was not unreasonably duplicative of her prior request within the meaning of Utah Code Annotated § 63G-2-201(7)(a)(iv), in that it expressly excluded any documents produced pursuant to her prior request.

41.    Plaintiff is therefore entitled to an order of this court overruling the University's denial of her GRAMA request, and providing all responsive documents.

Wherefore, Plaintiff respectfully requests equitable release this hereinafter more fully set forth in her prayer for relief.

4934-6199-3054.v1

## SECOND CLAIM FOR RELIEF

### (Violation of Civil Rights)

42.    Plaintiff incorporates by reference all allegations of paragraphs 1 through 40 of this Complaint.

43.    Plaintiff's ejectment from the Utah-BYU sporting event on January 18, 2025, was plainly motivated by racial animus, the professed reason for her ejectment having been patently false and pretextual.

44.    By singling plaintiff out for disparate treatment based, in whole or in part, on her racial and ethnic identity, the University violated the provisions of 42 U.S.C. §§ 1983 and 2000(d), as well as the Equal Protection Clause of the United States Constitution, all under color of law.

45.    Plaintiff is therefore entitled to an award of damages in an amount to be determined at trial, which shall in no event be less than $50,000.00.

46.    Plaintiff is further entitled, pursuant to 42 U.S.C. § 1988, to an award of all costs and reasonable attorneys' fees incurred in the bringing of this action.

Wherefore, Plaintiff demands relief as hereinafter more fully set forth in her prayer for relief.

## THIRD CLAIM FOR RELIEF

### (Intentional Infliction of Severe Emotional Distress)

47.    Plaintiff incorporates by reference all allegations in 1 through 45 of this Complaint.

4934-6199-3054.v1

48.     The University's actions against Plaintiff on January 18, 2025, as detailed above, were intended to cause, and did in fact cause, severe emotional distress to Plaintiff by reason of her having been singled out and falsely accused of assault due to her ethnicity.

49.     Since the incident, Plaintiff has been afraid of appearing in public or at any organized gathering, given the current climate toward immigrants (illegal or otherwise) in the state of Utah and elsewhere.

50.     Plaintiff is therefore entitled to an award of damages in an amount to be determined at trial, which shall in no event be less than $50,000.

Wherefore, Plaintiff demands relief as hereinafter more fully set forth in our prayer for relief.

## FOURTH CLAIM FOR RELIEF

### (Breach of Contract)

51.     Plaintiff incorporates by reference all allegations of paragraphs 1 through 49 of this Complaint.

52.     The University's sale of, and Plaintiff's acquisition of, admission tickets to the Utah-BYU basketball game on January 18, 2025, constituted a binding and enforceable contract, under which she was entitled to attend the game until its completion.

53.     By forcibly ejecting Plaintiff from the from the game prior to its conclusion, the University committed a substantial material breach of that contract.

54.     By reason of that breach, Plaintiff is entitled to an award of damages in an amount to be determined at trial.

Wherefore, Plaintiff demands relief as set hereinafter more fully set forth in her prayer for relief.

4934-6199-3054.v1

## FIFTH CLAIM FOR RELIEF

### (False Arrest)

55.     Plaintiff incorporates by reference all allegations of paragraphs 1 through 53 of this Complaint.

56.     Plaintiff's forcible ejectment from the January 18, 2025 sports event, as described above, constituted a tortious and unlawful false arrest in that:

a.     The university and its representatives lacked probable cause to force plaintiff from the event;

b.     The ejectment was in violation of plaintiff's equal protection rights under the Fourteenth Amendment of the United States Constitution; and

c.     The ejection was known by the university's representatives to the false and protectoral.

57.     Plaintiff is therefore entitled to an award of damages in an amount to be determined at trial, which shall in no event be less than $50,000.

Wherefore, Plaintiff demands relief as hereinafter more fully set forth in her prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Elizabeth Ondina Wright requests relief against Defendant University of Utah as follows:

1.     That, pursuant to the First Claim for Relief, the Court reverse the University's denial of Plaintiff's request for documents submitted under Utah Code Ann. § 63(g)-2-201, *et seq.*, and order the University to produce all responsive documents thereto.

2.      In addition, and not in the alternative, that, pursuant to the Second Claim for Relief, the Court enter judgment in favor of Plaintiff and against the University, by reason of the University's violation of 42 U.S.C. §§ 1983 and 2000(d), in an amount to be determined at trial which shall in no event be less than $50,000.

3.      In addition, and not in the alternative, that, pursuant to the Third Claim for Relief, the Court award damages in favor of Plaintiff and against the University by reason of the University's intentional infliction of severe emotional distress in an amount to be determined at trial, which shall in no event be less than $50,000.

4.      In addition, and not in the alternative, that, pursuant to the Fourth Claim for Relief, the Court enter judgment in favor of Plaintiff and against the University by use of the University's breach of contract with Plaintiff in an amount to be determined at trial.

5.      In addition, and not in the alternative, that, pursuant to the Fifth Claim for Relief, the Court award judgment in favor of Plaintiff and against Defendant by reason of Plaintiff's false and unlawful arrest, in an amount to be determined at trial, which shall in no event be less than $50,000.

6.      Plaintiff is therefore entitled to an award of damages in an amount to be determined at trial, which shall in no event be less than $50,000.

7.      For punitive damages to the extent permitted by law.

8.      For Plaintiff's costs and attorney's fees incurred herein pursuant to 42 U.S.C. § 1988.

9.      For such other and further relief as the Court shall deem just and equitable.

Plaintiff demands trial by jury of all issues triable of right by jury herein.

DATED August 15, 2025.

PARSONS BEHLE & LATIMER

*/s/ Vincent C. Rampton*

Vincent C. Rampton

*Attorneys for Plaintiff*
*ELIZABETH ONDINA WRIGHT*

Plaintiff's Address:

1924 East 2100 South
Salt Lake City, Utah 84106

4934-6199-3054.v1

# EXHIBIT 1

**Rhonda Kelley**

| | |
|---|---|
| **From:** | University of Utah Public Records Center <universityofutah@govqa.us> |
| **Sent:** | Tuesday, February 18, 2025 11:44 AM |
| **To:** | Vincent Rampton |
| **Subject:** | GRAMA Request :: R005752-021825 |

**This Message Is From an External Sender**
This message came from outside your organization.

Report Suspicious



Dear Attorney vince rampton:

Thank you for your interest in public records of the University of Utah. Your request has been received and will be processed in accordance with the Utah Government Records Access and Management Act, Utah Code §§ 63G-2-201 et seq., as amended ("GRAMA"). Your request was received on 2/18/2025 and given the reference number R005752-021825 for tracking purposes.

**Records Requested:** All records maintained by either University of Utah Guest Services, the University of Utah Police Department or the University of Utah Department of Public Safety relating to Elizabeth Wright's ejectment from the Utah-BYU basketball game on January 18, 2025, including (but not limited to) notes, interview transcriptions or summaries, written reports, emails, memoranda, created by or addressed to any of the following: Major Heather Sturzenegger, Ben Steward, Charlie Cavanagh, Ashley Renzi, Sergeant Larimie Lancaster, the University of Utah employee who accused Elizabeth Wright of touching him/her/them prior to her ejectment, or any other agent, employee or representative of the University of Utah involved in any way in the determination to eject Elizabeth Wright from the basketball game on January 18, 2025.

Your request will be sent to the relevant University department(s) to locate the records you seek and to determine any costs associated with satisfying your request. PLEASE NOTE: GRAMA does not require a governmental entity to answer questions, create a record, provide a record in a format not normally maintained by the governmental entity, or compile, format, summarize, or tailor information in response to a request.

You can monitor the progress of your request at the link below. You will receive an email when your request has been completed. Thank you for using the University of Utah Public Records Center.

To monitor the progress or update this request please log into the University of Utah Public Records Center



# EXHIBIT 2



201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Main  801.532.1234
Fax  801.536.6111

A Professional
Law Corporation

Vincent Rampton
Attorney at Law
Direct  801-536-6757
VRampton@parsonsbehle.com

June 25, 2025

**VIA EMAIL AND FIRST CLASS MAIL**

Todd Samuelson
J. Willard Marriott Library
295 South 1500 East
Salt Lake City, Utah 84112

Email: gramaappeals@lists.utah.edu

  **Re:**   **Notice of GRAMA Appeal (GRAMA Request R006007-051225-Elizabeth Wright)**

Dear Mr. Samuelson:

  This firm represents Elizabeth Wright, residing at 1924 East 2100 South, Salt Lake City UT 84106, tel. (801) 244-1215, email: bitawright@comcast.net, in pursuing a records request to the University of Utah Guest Services Department, and to the University of Utah Police Department or Department of Public Safety, relating to Ms. Wright's ejectment from a Utah-BYU basketball game on January 18, 2025 pursuant to Utah Code Ann. § 63G-2-101, et seq., Utah's Governmental Records Access and Management Act ("GRAMA").  The request, submitted May 12, 2025, is attached as Exhibit 1.

  Please consider this an appeal from the University's denial of Ms. Wright's GRAMA request pursuant to Utah Code Ann. § 63G-2-401, *et seq.*

### FACTUAL BACKGROUND

  Ms. Wright's May 12, 2025 GRAMA Request arose from an incident occurring during the January 18, 2025 Utah-BYU basketball game at the University Special Event Center, which Ms. Wright attended with her husband and children. While a United States citizen Ms. Wright is a native of Peru; her English is excellent, but her accent is distinct, and her appearance is Latina.

  During the game, Ms. Wright's children (including pre-teen children) were seated in the row in front of her and her husband. As has long been the tradition at Utah-BYU sporting events, the Wright children were displaying two signs with frivolous but harmless messages aimed at the

4909-0378-6804.v1

Todd Samuelson
June 25, 2025
Page Two

opposing team. Without warning, two employees of the University of Utah Guest Services, both older men, approached the children, ripped the signs from their possession, yelled abuse at them and departed. The children (the youngest of whom was 8 years old) were frightened and visibly upset by having been accosted in this manner. Ms. Wright and her husband therefore went to the top of the aisle by which they had been seated, spoke to an usher located there and asked who they could talk to about the incident. They were directed to the Guest Services office at door number 18. Neither Ms. Wright nor her husband touched or made any contact with the usher. They spoke to Ashley Renzi, Guest Services representative, who was sympathetic with their concerns over the incident and its impact on their children, and summoned Charlie Cavanagh.

Ms. Wright protested to Mr. Cavanaugh that the actions of the University representatives had been unwarranted and upsetting, and asked for the signs back. She also asked for an apology. Neither of these was forthcoming. Neither Ms. Wright nor her husband made any contact with Mr. Cavanagh, Ms. Renzi or any other University employee. Following the exchange described above, the Wrights returned to their seats.

There was no further communication between the Wrights and University representatives through most of the remainder of the game. Near the end of the game, however, five to six police officers descended the aisle. A Sargeant Lancaster beckoned to Ms. Wright, directing her to leave her seat. Ms. Wright and her husband complied, walking back up the aisle; however, Ms. Wright's husband was blocked by the other police officer. Sargeant Lancaster then notified Ms. Wright that she was ordered to leave the premises immediately, or that she would be arrested for trespass. Mr. Cavanagh, in company with the officers, was wearing a broad smile at the time. Mr. Wright went back to the family seats, collected the children, and all departed the event, to the laughter of Mr. Cavanaugh and the attending police officers

## PROCEDURE AND CURRENT POSTURE

On February 18, 2025, this office submitted its original GRAMA Request to the university departments described above, relative to the above incident. The University responded on April 1, 2025 - *see* Exhibit 2 hereto. The only records produced were one eight-page document: "Case Report for Incident 25-0194 . . . Nature: Disorderly" and a bodycam recording of Ms. Wright's ejectment. Specifically mentioned in the Case Report were two witness statements which were not produced, although the case summary clearly relied on their content.

Accordingly, on May 12, 2025, this office submitted the current GRAMA request (Exhibit 1). It specifically excluded all records produced in response to the prior request, but sought those records which had been withheld without explanation from the University's response to that request:

All records maintained by either University of Utah Guest Services, the University of Utah Police Department or the University of Utah Department of Public Safety relating to Elizabeth Wright's ejectment from the Utah-BYU

Todd Samuelson
June 25, 2025
Page Three

> basketball game on January 18, 2025, including (but not limited to) notes, interview transcriptions or summaries, written reports, emails, memoranda, created by or addressed to any of the following: Major Heather Sturzenegger, Ben Steward, Charlie Cavanagh, Ashley Renzi, Sergeant Larimie Lancaster, the University of Utah employee who accused Elizabeth Wright of touching him/her/them prior to her ejectment, or any other agent, employee or representative of the University of Utah involved in any way in the determination to eject Elizabeth Wright from the basketball game on January 18, 2025, *with the exception of those records previously produced in response to Request Reference No. R005752-021825*

(Emphasis added.)

This office received the University's response to the foregoing on May 27, 2025 (Exhibit 3 hereto): "Under GRAMA, the University is not required to fulfill a duplicative records request. *See* Utah Code § 63G-2-201(7)(a)(iv). The University responded to your February 18, 2025 request on April 2, 2025. If you wish to request additional records, you may submit a new, non-duplicative request and we will respond accordingly."

## DISCUSSION

As recognized in its May 27, 2025 initial response (Exhibit 3 hereto), the University, as a governmental entity of the state of Utah, is subject to the Governmental Records Access and Management Act. Thereunder, "a person has the right to inspect a public record free of charge, and the right to take a copy of a public record during normal working hours . . ." – Utah Code Ann. § 63G-2-201(1)(a).

The University, without explanation, withheld records relating to the January 18, 2025 incident involving Ms. Wright. When her first request yielded a response identifying, but not producing, these records, she submitted another request *expressly excluding* records already produced, but seeking records referenced and withheld without explanation. The request was not in any way duplicative of the February 18, 2025 request, and specifically avoided any duplication in its wording. The University, though, invokes Utah Code Ann. § 63G-2-201(7)(a)(iv), which provides only that "In response to a request, a governmental entity is not required to…fulfill a person's records request if the request *unreasonably* duplicates prior records requests from that person" (Emphasis added). There was and is nothing unreasonable in seeking, through subsequent records request, witness statements and other documentation identified, but withheld from prior requests without explanation.

Elizabeth Wright (the "subject" of the requested records) should have access to all documentation related to the January 18, 2025 incident generated or maintained by the University of Utah departments identified, even if private—*See* Utah Code Ann. § 63G-2-202(1)(a)(i). Her rights should not be perfunctorily dismissed because identified records relating to the January 18, 2025 incident were identified but withheld, and therefore asked for specifically.

4909-0378-6804.v1

Todd Samuelson
June 25, 2025
Page Four

Please feel free to contact this office with any questions or response.

Cordially,

PARSONS BEHLE & LATIMER

Vincent C. Rampton
Attorney at Law

VR:ab

# EXHIBIT 1

**Rhonda Kelley**

| | |
|---|---|
| **From:** | University of Utah Public Records Center <universityofutah@govqa.us> |
| **Sent:** | Monday, May 12, 2025 10:47 AM |
| **To:** | Vincent Rampton |
| **Subject:** | GRAMA Request :: R006007-051225 |

**This Message Is From an External Sender**
This message came from outside your organization.                                         Report Suspicious


THE
UNIVERSITY
OF UTAH

Dear Attorney vince rampton:

Thank you for your interest in public records of the University of Utah. Your request has been received and will be processed in accordance with the Utah Government Records Access and Management Act, Utah Code §§ 63G-2-201 et seq., as amended ("GRAMA"). Your request was received on 5/12/2025 and given the reference number R006007-051225 for tracking purposes.

**Records Requested:** All records maintained by either University of Utah Guest Services, the University of Utah Police Department or the University of Utah Department of Public Safety relating to Elizabeth Wright's ejectment from the Utah-BYU basketball game on January 18, 2025, including (but not limited to) notes, interview transcriptions or summaries, written reports, emails, memoranda, created by or addressed to any of the following: Major Heather Sturzenegger, Ben Steward, Charlie Cavanagh, Ashley Renzi, Sergeant Larimie Lancaster, the University of Utah employee who accused Elizabeth Wright of touching him/her/them prior to her ejectment, or any other agent, employee or representative of the University of Utah involved in any way in the determination to eject Elizabeth Wright from the basketball game on January 18, 2025, with the exception of those records previously produced in response to Request Refereence No. R005752-021825

Your request will be sent to the relevant University department(s) to locate the records you seek and to determine any costs associated with satisfying your request. PLEASE NOTE: GRAMA does not require a governmental entity to answer questions, create a record, provide a record in a format not normally maintained by the governmental entity, or compile, format, summarize, or tailor information in response to a request.

You can monitor the progress of your request at the link below. You will receive an email when your request has been completed. Thank you for using the University of Utah Public Records Center.

To monitor the progress or update this request please log into the University of Utah Public Records Center


*Powered by*
GovQA

1

# EXHIBIT 2

 # U of U Department of Public Safety

Case Report for Incident 25-0194

| | | |
|---|---|---|
| **Nature:** DISORDERLY | | **Address:** 1825 E SOUTH CAMPUS DR; |
| | | B090 - JHC; 450 S |
| **Location:** C | | Salt Lake City UT 84112 |

**Offense Codes:** DCON
**Received By:** Lancaster, L     **How Received:** O        **Agency:** UUPD
**Responding Officers:** Lancaster, L, Arrington, K
**Responsible Officer:** Lancaster, L     **Disposition:** CLO 03/05/25
**When Reported:** 20:53:02 01/18/25     **Occurred Between:** 19:00:00 01/18/25 and 20:53:02 01/18/25

| | | |
|---|---|---|
| **Assigned To:** | **Detail:** | **Date Assigned:** \*\*/\*\*/\*\* |
| **Status:** | **Status Date:** \*\*/\*\*/\*\* | **Due Date:** \*\*/\*\*/\*\* |

**Complainant:**
    **Last:**                **First:**            **Mid:**
    **DOB:** \*\*/\*\*/\*\*      **Dr Lic:**         **Address:**
    **Race:**      **Sex:**      **Phone:**         **City:** ,

**Offense Codes**
    **Reported:**                               **Observed:** DCON Disorderly Conduct
**Additional Offense:** DCON Disorderly Conduct

**Circumstances**
    SPEC Related to Special Event

**Responding Officers:**           **Unit :**
       Lancaster, L             S20
       Arrington, K            S30

| | | |
|---|---|---|
| **Responsible Officer:** Lancaster, L | | **Agency:** UUPD |
| **Received By:** Lancaster, L | | **Last Radio Log:** 20:53:46 01/18/25 CMPLT |
| **How Received:** O Officer Report | | **Clearance:** CMP Completed |
| **When Reported:** 20:53:02 01/18/25 | | **Disposition:** CLO **Date:** 03/05/25 |
| **Judicial Status:** CAMP | | **Occurred between:** 19:00:00 01/18/25 |
| **Misc Entry:** | | **and:** 20:53:02 01/18/25 |

**Modus Operandi:**         **Description :**                **Method :**
    BUILDING           Building                   99

04/02/25

## Involvements

| Date | Type | Description | |
|------|------|-------------|---|
| 01/20/25 | Name | Cavanagh, Charlie | Witness |
| 01/20/25 | Name | Wright, Elizabeth | Suspect |
| 01/20/25 | Name | Hitesman, Scott | Complainant |
| 01/18/25 | Cad Call | 20:53:02 01/18/25 INFORMATION | Initiating Call |

04/02/25

### Narrative

Fan ejected from Jon M Huntsman Center during the Utah vs BYU Basketball game, after confronted CSC employee and puting her hands on him.

_____

Responsible LEO:

_____

Approved by:

_____

Date

## Supplement

25-0194 - Fan ejection- Sgt. Lancaster BWC active

While working at the Utah vs. BYU basketball game, I was asked to assist CSC staffing with a disgruntled patron. I was informed that two teenagers had brought a sign into the venue that compared BYU fans to P. Diddy. P. Diddy has been accused of kidnapping, drugging, and coercing women into sexual activities, sometimes through the use of firearms and threats of violence.

Due to the offensive nature of the sign, athletic staff confiscated it from the teenagers. The mother of the teenagers, identified as Elizabeth Wright, confronted the CSC employee working Portal 10, expressing anger that the signs had been taken from her children.

Elizabeth demanded that the signs be returned and that the CSC employee apologize to her children. When the CSC employee refused, she placed her hands on his chest, insisting that he retrieve the person who confiscated the sign. The CSC employee, later identified as Scott Hitesman, backed off to avoid further confrontation.

Elizabeth then approached the guest service window and spoke with CSC manager Charlie Cavanagh. She made the same demands, and when informed that her request was not possible due to policy violations and the offensive nature of the signs, she insisted on speaking to his supervisor or the person in charge, refusing to accept no for an answer. Elizabeth escalated her verbal attack on Charlie, claiming that her son had mental health issues and that he had left the venue feeling defeated. She took photos of Charlie's credentials, stating that she intended to file a complaint of the highest order. After placing her hands on the employee, he contacted command and requested assistance in having her ejected from the arena for violating the University of Utah's fan policy.

EJECTION:
The following is a summary of my contact with Elizabeth. Please see body-worn camera footage for full details.

I responded to Section J inside Portal 10 and located Elizabeth seated in the stands. I activated my camera and motioned for Elizabeth to come speak with me. We walked out to the concourse near Door #3. I explained that she had violated University policy by touching one of the CSC staff members and that I was now ejecting her from the venue. Elizabeth denied touching or assaulting any staff member. I reiterated that the employee stated she did and that I believed my employee.

I explained that I was simply asking her to leave the building and that she was being trespassed. I informed her that I would not argue with her and requested that she leave multiple times. Elizabeth demanded to speak to my boss. I explained that I was the boss and that if she wished to speak to my supervisor, she would have to call them later. I provided her with a business card containing all my contact information. Knowing that the basketball game was nearing its end, I explained that I had a job to do and requested that she simply leave.

Elizabeth claimed I was biased and racist for ejecting her from the arena. She switched from English to Spanish, accusing me of being racist and very bad. I responded in Spanish that I speak Spanish. She then stated in Spanish that I would not do this to my wife. I replied with "goodbye" in Spanish and walked her out through Door #3.

END OF REPORT

## Supplement

25-0194    Follow up on incident.    Lancaster s20

On January 21st 2025, I was able to obtain a witness statement from Charles Cavanagh.  I also obtained a incident report that was written by the victim Scott Hitesman on January 18th 2025.

Athletics also took photos of the signs that were taken during this incident.  I have attached all the files to this case.  Please see for full details.

END OF REPORT:

04/02/25

## Supplement

25-0194 Disorderly/ Arrington S30
1825 E SOUTH CAMPUS DR; B090 - JHC; 450 S
01/19/2025
BYU/ UTES mens Basketball event

I was assigned to the MUSS during the event and I was walking in the concourse
when I noticed Sgt. Lancaster dealing with a situation. I walked over to see if
I could help but Sgt Lancaster was busy.

I was told by the stadium staff that a female guest (later Identified as
Elizabeth Wright) and her kids had inappropriate posters that were sexual in
nature and or had cursing on them. I was told that the signs were taken away
from the children holding the signs. This was because they were a violation of
the code of conduct. This was meant as a warning and nothing initially happened.

I was told 20 min's later Elizabeth confronted a worker and yelled at him and
put her hands on him. I was told she was being asked to leave the stadium
because of her behavior and the code of conduct violations.

I watched as Elizabeth was asked to come talk to Sgt Lancaster from her seat.
She complied but was clearly upset. He was talking to the female guest
(Elizabeth) that was not understanding why she was being asked to leave. She was
becoming upset and argumentative. Sgt Lancaster had to repeatedly explain the
situation and say she needed to get her things and leave.

A male who I assume was Elizabeth's husband asked me why she was being kicked
out by law enforcement. I explained to the main the code of conduct violation
and the stadium's right to refuse services.

I watched as Elizabeth got her phone out and appeared to start to record Sgt
Lancaster she then started making comments about how we were only kicking her
out because of her race. She was assured that she was being kicked out because
of her behavior and code of conduct violations. Elizabeth and her family
eventually left the scene.

I have no further information and this will be the end of my report.

Arrington

*Case Report for Incident 25-0194*                                              *Page 8 of 8*

## Name Involvements:



**Complainant :**  82018

| | | | | |
|---|---|---|---|---|
| **Last:** Hitesman | **First:** Scott | **Mid:** |
| **DOB:** | **Dr Lic:** | **Address:** |
| **Race:** W **Sex:** M | **Phone:** | **City:** |

**Witness :**  82016

| | | | | |
|---|---|---|---|---|
| **Last:** Cavanagh | **First:** Charlie | **Mid:** |
| **DOB:** | **Dr Lic:** | **Address:** |
| **Race:** W **Sex:** M | **Phone:** | **City:** , |

**Suspect :**  82017

| | | | | |
|---|---|---|---|---|
| **Last:** Wright | **First:** Elizabeth | **Mid:** |
| **DOB:** **/**/** | **Dr Lic:** | **Address:** |
| **Race:** W **Sex:** F | **Phone:** (801)244-1215 | **City:** , |

04/02/25

# EXHIBIT 3

**Rhonda Kelley**

| | |
|---|---|
| **From:** | University of Utah Public Records Center <universityofutah@govqa.us> |
| **Sent:** | Tuesday, May 27, 2025 4:26 PM |
| **To:** | Vincent Rampton |
| **Subject:** | [Records Center] GRAMA Request :: R006007-051225 |

**This Message Is From an Untrusted Sender**
You have not previously corresponded with this sender.

Report Suspicious

--- Please respond above this line ---


THE
UNIVERSITY
OF UTAH

May 27, 2025

RE: PUBLIC RECORDS REQUEST of May 12, 2025, Reference # R006007-051225.

The University of Utah received the following request for records from Attorney vince rampton on May 12, 2025:

> **All records maintained by either University of Utah Guest Services, the University of Utah Police Department or the University of Utah Department of Public Safety relating to Elizabeth Wright's ejectment from the Utah-BYU basketball game on January 18, 2025, including (but not limited to) notes, interview transcriptions or summaries, written reports, emails, memoranda, created by or addressed to any of the following: Major Heather Sturzenegger, Ben Steward, Charlie Cavanagh, Ashley Renzi, Sergeant Larimie Lancaster, the University of Utah employee who accused Elizabeth Wright of touching him/her/them prior to her ejectment, or any other agent, employee or representative of the University of Utah involved in any way in the determination to eject Elizabeth Wright from the basketball game on January 18, 2025, with the exception of those records previously produced in response to Request Refereence No. R005752-021825**

**Records access considerations**
The University, as a governmental entity of the State of Utah, is subject to the Government Records Access and Management Act, Utah Code sections 63G-2-101 to -901 ("GRAMA").

Under GRAMA, the University is not required to fulfill a duplicative records request. *See* Utah Code § 63G-2-201(7)(a)(iv). The University responded to your February 18, 2025 request on April 2, 2025. If you wish to request additional records, you may submit a new, non-duplicative request and we will respond accordingly.

To monitor the progress of this request please log into the University of Utah Public Records Center


Powered by
GovQA

# EXHIBIT 3

**Rhonda Kelley**

| | |
|---|---|
| **From:** | University of Utah Public Records Center <universityofutah@govqa.us> |
| **Sent:** | Monday, May 12, 2025 10:47 AM |
| **To:** | Vincent Rampton |
| **Subject:** | GRAMA Request :: R006007-051225 |

**This Message Is From an External Sender**
This message came from outside your organization.

Report Suspicious



Dear Attorney vince rampton:

Thank you for your interest in public records of the University of Utah. Your request has been received and will be processed in accordance with the Utah Government Records Access and Management Act, Utah Code §§ 63G-2-201 et seq., as amended ("GRAMA"). Your request was received on 5/12/2025 and given the reference number R006007-051225 for tracking purposes.

**Records Requested:** All records maintained by either University of Utah Guest Services, the University of Utah Police Department or the University of Utah Department of Public Safety relating to Elizabeth Wright's ejectment from the Utah-BYU basketball game on January 18, 2025, including (but not limited to) notes, interview transcriptions or summaries, written reports, emails, memoranda, created by or addressed to any of the following: Major Heather Sturzenegger, Ben Steward, Charlie Cavanagh, Ashley Renzi, Sergeant Larimie Lancaster, the University of Utah employee who accused Elizabeth Wright of touching him/her/them prior to her ejectment, or any other agent, employee or representative of the University of Utah involved in any way in the determination to eject Elizabeth Wright from the basketball game on January 18, 2025, with the exception of those records previously produced in response to Request Refereence No. R005752-021825

Your request will be sent to the relevant University department(s) to locate the records you seek and to determine any costs associated with satisfying your request. PLEASE NOTE: GRAMA does not require a governmental entity to answer questions, create a record, provide a record in a format not normally maintained by the governmental entity, or compile, format, summarize, or tailor information in response to a request.

You can monitor the progress of your request at the link below. You will receive an email when your request has been completed. Thank you for using the University of Utah Public Records Center.

To monitor the progress or update this request please log into the University of Utah Public Records Center



1

# EXHIBIT 4

**Rhonda Kelley**

| | |
|---|---|
| **From:** | University of Utah Public Records Center <universityofutah@govqa.us> |
| **Sent:** | Tuesday, May 27, 2025 4:26 PM |
| **To:** | Vincent Rampton |
| **Subject:** | [Records Center] GRAMA Request :: R006007-051225 |

**This Message Is From an Untrusted Sender**
You have not previously corresponded with this sender.

Report Suspicious

--- Please respond above this line ---



May 27, 2025

RE: PUBLIC RECORDS REQUEST of May 12, 2025, Reference # R006007-051225.

The University of Utah received the following request for records from Attorney vince rampton on May 12, 2025:

> All records maintained by either University of Utah Guest Services, the
> University of Utah Police Department or the University of Utah Department of Public Safety relating to
> Elizabeth Wright's ejectment from the Utah-BYU basketball game on January 18, 2025, including (but not
> limited to) notes, interview transcriptions or summaries, written reports, emails, memoranda, created by
> or addressed to any of the following: Major Heather Sturzenegger, Ben Steward, Charlie Cavanagh,
> Ashley Renzi, Sergeant Larimie Lancaster, the University of Utah employee who accused Elizabeth
> Wright of touching him/her/them prior to her ejectment, or any other agent, employee or representative of
> the University of Utah involved in any way in the determination to eject Elizabeth Wright from the
> basketball game on January 18, 2025, with the exception of those records previously produced in response
> to Request Refereence No. R005752-021825

**Records access considerations**
The University, as a governmental entity of the State of Utah, is subject to the Government Records Access and
Management Act, Utah Code sections 63G-2-101 to -901 ("GRAMA").

Under GRAMA, the University is not required to fulfill a duplicative records request. *See* Utah Code § 63G-2-
201(7)(a)(iv). The University responded to your February 18, 2025 request on April 2, 2025. If you wish to
request additional records, you may submit a new, non-duplicative request and we will respond accordingly.

To monitor the progress of this request please log into the University of Utah Public Records Center



1

# EXHIBIT 5



201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Main 801.532.1234
Fax 801.536.6111

A Professional
Law Corporation

Vincent Rampton
Attorney at Law
Direct 801-536-6757
VRampton@parsonsbehle.com

June 25, 2025

**VIA EMAIL AND FIRST CLASS MAIL**

Todd Samuelson
J. Willard Marriott Library
295 South 1500 East
Salt Lake City, Utah 84112

Email: gramaappeals@lists.utah.edu

**Re:     Notice of GRAMA Appeal (GRAMA Request R006007-051225-Elizabeth Wright)**

Dear Mr. Samuelson:

This firm represents Elizabeth Wright, residing at 1924 East 2100 South, Salt Lake City UT 84106, tel. (801) 244-1215, email: bitawright@comcast.net, in pursuing a records request to the University of Utah Guest Services Department, and to the University of Utah Police Department or Department of Public Safety, relating to Ms. Wright's ejectment from a Utah-BYU basketball game on January 18, 2025 pursuant to Utah Code Ann. § 63G-2-101, et seq., Utah's Governmental Records Access and Management Act ("GRAMA"). The request, submitted May 12, 2025, is attached as Exhibit 1.

Please consider this an appeal from the University's denial of Ms. Wright's GRAMA request pursuant to Utah Code Ann. § 63G-2-401, *et seq.*

## FACTUAL BACKGROUND

Ms. Wright's May 12, 2025 GRAMA Request arose from an incident occurring during the January 18, 2025 Utah-BYU basketball game at the University Special Event Center, which Ms. Wright attended with her husband and children. While a United States citizen Ms. Wright is a native of Peru; her English is excellent, but her accent is distinct, and her appearance is Latina.

During the game, Ms. Wright's children (including pre-teen children) were seated in the row in front of her and her husband. As has long been the tradition at Utah-BYU sporting events, the Wright children were displaying two signs with frivolous but harmless messages aimed at the

4909-0378-6804.v1

Todd Samuelson
June 25, 2025
Page Two

opposing team. Without warning, two employees of the University of Utah Guest Services, both older men, approached the children, ripped the signs from their possession, yelled abuse at them and departed. The children (the youngest of whom was 8 years old) were frightened and visibly upset by having been accosted in this manner. Ms. Wright and her husband therefore went to the top of the aisle by which they had been seated, spoke to an usher located there and asked who they could talk to about the incident. They were directed to the Guest Services office at door number 18. Neither Ms. Wright nor her husband touched or made any contact with the usher. They spoke to Ashley Renzi, Guest Services representative, who was sympathetic with their concerns over the incident and its impact on their children, and summoned Charlie Cavanagh.

Ms. Wright protested to Mr. Cavanaugh that the actions of the University representatives had been unwarranted and upsetting, and asked for the signs back. She also asked for an apology. Neither of these was forthcoming. Neither Ms. Wright nor her husband made any contact with Mr. Cavanagh, Ms. Renzi or any other University employee. Following the exchange described above, the Wrights returned to their seats.

There was no further communication between the Wrights and University representatives through most of the remainder of the game. Near the end of the game, however, five to six police officers descended the aisle. A Sargeant Lancaster beckoned to Ms. Wright, directing her to leave her seat. Ms. Wright and her husband complied, walking back up the aisle; however, Ms. Wright's husband was blocked by the other police officer. Sargeant Lancaster then notified Ms. Wright that she was ordered to leave the premises immediately, or that she would be arrested for trespass. Mr. Cavanagh, in company with the officers, was wearing a broad smile at the time. Mr. Wright went back to the family seats, collected the children, and all departed the event, to the laughter of Mr. Cavanaugh and the attending police officers

## PROCEDURE AND CURRENT POSTURE

On February 18, 2025, this office submitted its original GRAMA Request to the university departments described above, relative to the above incident. The University responded on April 1, 2025 - *see* Exhibit 2 hereto. The only records produced were one eight-page document: "Case Report for Incident 25-0194 . . . Nature: Disorderly" and a bodycam recording of Ms. Wright's ejectment. Specifically mentioned in the Case Report were two witness statements which were not produced, although the case summary clearly relied on their content.

Accordingly, on May 12, 2025, this office submitted the current GRAMA request (Exhibit 1). It specifically excluded all records produced in response to the prior request, but sought those records which had been withheld without explanation from the University's response to that request:

All records maintained by either University of Utah Guest Services, the University of Utah Police Department or the University of Utah Department of Public Safety relating to Elizabeth Wright's ejectment from the Utah-BYU

Todd Samuelson
June 25, 2025
Page Three

> basketball game on January 18, 2025, including (but not limited to) notes, interview transcriptions or summaries, written reports, emails, memoranda, created by or addressed to any of the following: Major Heather Sturzenegger, Ben Steward, Charlie Cavanagh, Ashley Renzi, Sergeant Larimie Lancaster, the University of Utah employee who accused Elizabeth Wright of touching him/her/them prior to her ejectment, or any other agent, employee or representative of the University of Utah involved in any way in the determination to eject Elizabeth Wright from the basketball game on January 18, 2025, *with the exception of those records previously produced in response to Request Reference No. R005752-021825*

(Emphasis added.)

This office received the University's response to the foregoing on May 27, 2025 (Exhibit 3 hereto): "Under GRAMA, the University is not required to fulfill a duplicative records request. *See* Utah Code § 63G-2-201(7)(a)(iv). The University responded to your February 18, 2025 request on April 2, 2025. If you wish to request additional records, you may submit a new, non-duplicative request and we will respond accordingly."

## DISCUSSION

As recognized in its May 27, 2025 initial response (Exhibit 3 hereto), the University, as a governmental entity of the state of Utah, is subject to the Governmental Records Access and Management Act. Thereunder, "a person has the right to inspect a public record free of charge, and the right to take a copy of a public record during normal working hours . . ." – Utah Code Ann. § 63G-2-201(1)(a).

The University, without explanation, withheld records relating to the January 18, 2025 incident involving Ms. Wright. When her first request yielded a response identifying, but not producing, these records, she submitted another request *expressly excluding* records already produced, but seeking records referenced and withheld without explanation. The request was not in any way duplicative of the February 18, 2025 request, and specifically avoided any duplication in its wording. The University, though, invokes Utah Code Ann. § 63G-2-201(7)(a)(iv), which provides only that "In response to a request, a governmental entity is not required to…fulfill a person's records request if the request *unreasonably* duplicates prior records requests from that person" (Emphasis added). There was and is nothing unreasonable in seeking, through subsequent records request, witness statements and other documentation identified, but withheld from prior requests without explanation.

Elizabeth Wright (the "subject" of the requested records) should have access to all documentation related to the January 18, 2025 incident generated or maintained by the University of Utah departments identified, even if private—*See* Utah Code Ann. § 63G-2-202(1)(a)(i). Her rights should not be perfunctorily dismissed because identified records relating to the January 18, 2025 incident were identified but withheld, and therefore asked for specifically.

Todd Samuelson
June 25, 2025
Page Four

Please feel free to contact this office with any questions or response.

Cordially,

PARSONS BEHLE & LATIMER

Vincent C. Rampton
Attorney at Law

VR:ab

# EXHIBIT 6



295 South 1500 East Salt Lake City, Utah 84112-0860 (801) 581-8558

July 10, 2025

Vincent Rampton
RE: Appeal on Request R006007-051225

Dear Mr. Rampton,

This response addresses the GRAMA appeal submitted on June 25, 2025, on behalf of your client, Elizabeth Wright, concerning the denial of Request R006007-051225.

Your office submitted GRAMA Request R005752-021825 on February 18, 2025, seeking all records related to Ms. Wright's removal from the Utah-BYU basketball game on January 18, 2025. The University responded on April 2, 2025, and provided responsive materials.

On May 12, 2025, your office submitted a new request (R006007-051225), claiming to seek only those withheld documents—particularly two witness statements—not included in the original release. That request was denied on May 27, 2025, under Utah Code § 63G-2-201(7)(a)(iv), as an unreasonably duplicative request.

My office finds that the May 12 request was reasonably denied as unreasonably duplicative.

GRAMA permits a governmental entity to deny a request that "unreasonably duplicates prior records requests from that person" (Utah Code § 63G-2-201(7)(a)(iv)). You contest that your February 18 and May 12 requests "specifically avoided any duplication in its wording", however, your requests both stem from the same incident, name the same individuals, and seek substantially the same categories of records, **utilizing identical language, with the second request merely excluding previously produced documents**. Permitting sequential, fragmentary requests that continually revisit the same subject matter—without a materially new basis—constitutes an administrative burden and undermines the efficiency goals of GRAMA.

Therefore, your appeal Request R006007-051225 is respectfully denied.

If you disagree with this decision, you have the right to appeal this determination to the Government Records Office Director or district court as provided in Utah Code section 63G-2-402. You also have the right under section 63A-12-111 to request mediation with the government records ombudsman.

An appeal to the Government Records Office Director should be sent to Government Records Office Director, 346 S. Rio Grande, Salt Lake City, UT 84101 or governmentrecordsoffice@utah.gov, with a copy to the University at the same time. Any

appeal must be filed within 30 days of this decision unless you request to mediate this denial, in which case the time period for filing the appeal is suspended for the period of time beginning the date you submit a request for mediation and ending as provided in subsections 63G-2-402(1)(c) and 63G-2-404(1)(b). A request for mediation should be sent to Monica Minaya, Government Records Ombudsman, 346 S. Rio Grande, Salt Lake City, UT 84101 or mminaya@utah.gov.

Very truly yours,

Todd Samuelson

Todd Samuelson
Chief Administrative Officer and Appeals Officer

cc: Terra Rossland, Director, Record Access

# EXHIBIT 7



**PARSONS**
**BEHLE &**
**LATIMER**

201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Main  801.532.1234
Fax  801.536.6111

A Professional
Law Corporation

Vincent Rampton
Attorney at Law
Direct  801-536-6757
VRampton@parsonsbehle.com

August 5, 2025

Monica Minaya, Government Records Ombudsman
Office of Government Records
Email: mminaya@utah.gov

> **Re:    Elizabeth Ondina Wright – GRAMA Requests**
> **R006007-051225 and R005752-021825**

Dear Ms. Minaya:

This office represents Elizabeth Ondina Wright in connection with an incident occurring at a University of Utah sporting event on January 18, 2025. Ms. Wright has been attempting, since that time, to obtain records of University of Utah Guest Services and security relating to her improper and discriminatory ejection from the event while attempting to protect her children.

Pursuant to Utah Code Annotated Section 63A-12-204(1)(a)(iii), Ms. Wright seeks mediation of the Chief Administrative Officer and Appeals Officer's denial of Ms. Wright's GRAMA requests enumerated above. A copy of Ms. Wright's appeals to the Chief Administrative Officer, together with the Officer's July 10, 2025 response thereto, are attached.

Please let me know when you have a response from the University concerning this request. Please also let me know if you need further information or other documentation.

Cordially,

Vincent Rampton

VR:skb
Attachments
cc:  Todd Samuelson, Chief Administrative Officer
     and Appeals Officer
     University of Utah
     295 South 1500 East
     Salt Lake City, UT 84112-0860

4912-1077-1802.v1

# EXHIBIT 8



**Department of Government Operations**
**Division of Archives and Records Service**

State of Utah

SPENCER J. COX
*Governor*

DEIDRE M. HENDERSON
*Lieutenant Governor*

MARVIN DODGE
*Executive Director*

KENNETH WILLIAMS
*Division Director*

Parsons Behle & Latimer V. University of Utah

8/13/2025

Per Utah Code §63A-12-204(3)(a) this letter serves as written certification that mediation is not taking place due to lack of consent. Mediation is a completely voluntary process where parties need to consent to enter mediation. I certify that a request for mediation was sent on 8/5/2025 and mediation did not take place due to lack of consent from a party.

*Monica Minaya*
Government Records Ombudsman

# EXHIBIT 9



**PARSONS BEHLE & LATIMER**

201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Main  801.532.1234
Fax  801.536.6111

A Professional
Law Corporation

Vincent Rampton
Direct  801-536-6757
VRampton@parsonsbehle.com

June 4, 2025

**VIA CERTIFIED MAIL AND EMAIL**

Office of the Attorney General
for the State of Utah
350 N. Main Street, Suite 230
Salt Lake City, Utah 84114
noticeofclaim@agutah.gov

University of Utah Office of General Counsel
201 Presidents Circle, Rm 309
Salt Lake City, Utah 84112
noticeofclaim@agutah.gov

**Re:    Elizabeth Ondina Wright - Notice of Claim**

To Whom It May Concern:

This office represents Elizabeth Ondina Wright in connection with a claim against the University of Utah, and particularly the University of Utah Guest Services Department and the University of Utah Police Department or Department of Public Safety, arising out of her forcible ejectment from a sporting event at the University of Utah Special Events Center on January 18, 2025.   Please consider this to constitute a notice of claim pursuant to Utah Code Ann. § 63G-7-401, *et seq*.

## STATEMENT OF FACTS

Ms. Wright's claims arise from an incident occurring during the January 18, 2025 Utah-BYU basketball game at the University Special Event Center, which Ms. Wright attended with her husband and children. While a United States citizen, Ms. Wright is a native of Peru; her English is excellent, but her accent is distinct, and her appearance is Latina.

During the game, Ms. Wright's children (including pre-teen children) were seated in the row in front of her and her husband. As has long been the tradition at Utah-BYU sporting events, the Wright children were displaying two signs with frivolous but harmless messages aimed at the opposing team. Without warning, two employees of the University of Utah Guest Services, both older men, approached the children, ripped the signs from their possession, yelled abuse at them and departed. The children (the youngest of whom was 8 years old) were frightened and visibly upset by having been accosted in this manner. Ms. Wright and her husband therefore went to the top of the aisle by which they had been seated, spoke to an usher located there and asked who they could talk to about the incident. They were directed to the Guest Services office at door

4896-8473-4794.v1

Office of the Attorney General for the State of Utah
University of Utah Office of General Counsel
June 4, 2025
Page Two

number 18. Neither Ms. Wright nor her husband touched or made any contact with the usher. Going to door 18, they spoke to Ashley Renzi, Guest Services representative, who was sympathetic with their concerns over the incident and its impact on their children, and summoned Charlie Cavanagh.

Ms. Wright protested to Mr. Cavanaugh that the actions of the University representatives had been unwarranted and upsetting, and asked for the signs back. She also asked for an apology. Neither of these was forthcoming. Neither Ms. Wright nor her husband made any contact with Mr. Cavanagh, Ms. Renzi or any other University employee. Following the exchange described above, the Wrights returned to their seats.

There was no further communication between the Wrights and University representatives through most of the remainder of the game. Near the end of the game, however, five to six police officers descended the aisle. A Sargeant Lancaster beckoned to Ms. Wright, directing her to leave her seat. Ms. Wright and her husband complied, walking back up the aisle; however, Ms. Wright's husband was blocked by the other police officer. Sargeant Lancaster then notified Ms. Wright that she was ordered to leave the premises immediately, or that she would be arrested for trespass. Mr. Cavanagh, in company with the officers, was wearing a broad smile at the time. The Wrights asked the reason for the demand, and were told that Ms. Wright was accused of having assaulted a University employee, a claim which was flatly false and which she denied. Mr. Wright went back to the family seats, collected the children, and all departed the event, to the laughter of Mr. Cavanagh and the attending police officers.

In the wake of the incident, the Wrights contacted Mr. Ben Steward, Senior Associate Director of Operations and Events at the University of Utah, reporting what had happened asking for an explanation. Mr. Steward's response indicated that he had interviewed various parties associated with the event (presumably taking notes for his own purposes) and gave a very inaccurate and stilted recount of what had happened.

Wrights thereafter made a complaint to the University of Utah Police Department concerning the conduct of Sargeant Lancaster and the other officers. They were thereafter notified only that an investigation had been concluded, but were given no information regarding its outcome.

Documents obtained from the University under UCA § 63G-2-101, *et seq.* indicate that certain affidavits exist supposedly verifying the University's claim of assault; these affidavits, however, were not produced in response to Wright's GRAMA request.

## NATURE OF CLAIM

The events described above were clearly and palpably racial in their motivation. While an American citizen, Ms. Wright is clearly Latina, both in her appearance and her accent. Her

Office of the Attorney General for the State of Utah
University of Utah Office of General Counsel
June 4, 2025
Page Three

treatment at the hands of University officials—due both to the fabricated nature of the grounds for which she was ejected, and the attitudes and deportment of those present at the time she was confronted by police officers—reflect attitudes of racial intolerance and xenophobia prevalent in the state and nation over the last decade.

The impact of the event on Ms. Wright has been devastating. She fears for herself and her children (also Latino in appearance) in public places. She has curtailed attendance and participation in group events, including religious services. And her trust in federal, state and local enforcement officials has been severely impacted.

Ms. Wright was deprived of rights of equal protection on the basis of racial classification, in violation of the Fourteenth Amendment to the United States Constitution. She was further subject to racial discrimination in violation of 42 U.S.C. § 2000d. As such, she has claims to assert against the University and its departments under 42 U.S.C. § 1983.

Supplemental state claims include intentional infliction of severe emotional distress, breach of contract (by reason of ejectment from an event which she had paid to enter, before the conclusion thereof), defamation, and breach of the implied covenant of good faith and fair dealing.

Damages cannot be calculated at this time, as they would constitute principally of general damages as awarded by a trial court. Special damages would include the price of tickets paid to enter the event.

We anticipate your response to the foregoing within the next sixty days (60). If you have questions, please contact the undersigned.

Cordially,

PARSONS BEHLE & LATIMER

Vincent Rampton

VR:cw

# EXHIBIT 9.1

## SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Office of the Attorney General
for the State of Utah
350 N. Main Street, Suite 230
Salt Lake City, UT 84114



9590 9402 9281 4295 3007 88

2. Article Number *(Transfer from service label)*

9589 0710 5270 2306 5000 14

## COMPLETE THIS SECTION ON DELIVERY

A. Signature

X

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*          C. Date of Delivery

JUN 1 1 2025

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☑ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ☐Mail
☐ ☐Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

Vincent 41503.001

USPS TRACKING #



9590 9402 9281 4295 3007 88

**United States
Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

Parsons Behle & Latimer
201 S. Main Street, Suite 1800
P.O. Box 45898
Salt Lake City, UT 84145-0898